UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALVIN GEORGE WALKER, SR., | |
| Petitioner, | Case No. C18-1799-JCC-MAT |
| v. | REPORT AND RECOMMENDATION |
| RON HAYNES, | |
| Respondent. | |

INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Alvin Walker is a state prisoner who is currently confined at the Stafford Creek Corrections Center in Aberdeen, Washington. He seeks relief under 28 U.S.C. § 2254 from a 2014 King County Superior Court judgment and sentence. Respondent has filed an answer responding to petitioner's federal habeas claims, and has submitted relevant portions of the state court record. Petitioner has filed a response to respondent's answer, and respondent has filed a reply to petitioner's response. This Court, having carefully reviewed petitioner's petition for writ of habeas corpus, all briefing of the parties, and the state court record, concludes that the petition should be denied and this action should be dismissed with prejudice.

/ / /

REPORT AND RECOMMENDATION
PAGE - 1

# FACTUAL/PROCEDURAL BACKGROUND

On May 14, 2010, petitioner was convicted, following a jury trial, on charges of second degree assault, second degree rape, and felony harassment. (Dkt. 10, Ex. 1 at 1.) The Washington Court of Appeals, on direct appeal of these convictions, summarized the facts underlying petitioner's crimes as follows:

> Alvin Walker and Bridget Mitchell dated for less than a year. As their relationship progressed, Walker became possessive and abused Mitchell both verbally and physically. Mitchell told Walker she wanted to end the relationship. Walker did not take the news very well.
>
> The next day, Walker asked Mitchell to meet him at a mutual friend's house. When Mitchell arrived, nobody was there. She left to purchase drugs, returned about an hour later, and entered the house. Walker showed up shortly thereafter, banging and kicking the door, asking to be let in. As soon as Mitchell opened the door, Walker grabbed her by the neck, demanding to know where she had been. He grabbed two knives, and put them to her neck while holding her on the kitchen floor, called her "bitch", and stated he was going to kill her. After about thirty minutes of the abuse, he let Mitchell get up. As she was headed to the living room, Walker picked her up and threw her against the wall. He then picked her up again, and threw her on the couch. Walker smoked crack on the couch, after which he started choking Mitchell.
>
> Mitchell told Walker she needed to use the bathroom. Walker followed her in the bathroom, and again started choking her while she was on the toilet. Walker eventually stopped, and went into the bedroom. Mitchell did not recall how she arrived in the bedroom, but sometime thereafter, Walker threw her onto the bed face down and began "socking" her on the back of her head. Walker pulled Mitchell's pants down, accusing her of having sex with someone else, and inserted his fingers into her vagina. Walker eventually stopped and went to the bathroom. At that point, Mitchell escaped by jumping off a balcony. She fled to another apartment in the complex, and the resident of that apartment called 911.
>
> The State charged Walker with second-degree assault (by strangulation), second-degree rape, and felony harassment, all with domestic violence designations. The jury convicted Walker as charged, and the trial court imposed standard range sentences for the assault and harassment charges, and an indeterminate sentence [of 159 months to life] on the rape charge.

*State v. Walker*, 163 Wash. App. 1032, 2011WL 4389914, at *1 (Sept. 19, 2011).

Petitioner appealed his judgement and sentence to the Washington Court of Appeals, and on September 19, 2011, the Court of Appeals issued an unpublished opinion affirming his convictions. *Id*. Petitioner thereafter filed a petition for review in the Washington Supreme Court, and the Supreme Court denied review without comment on February 8, 2012. *State v. Walker*, 173 Wash. 2d 1018, 272 P.3d 247 (2012) (Table).

On March 5, 2013, petitioner, through counsel, filed a CrR 7.8 motion alleging ineffective assistance of trial counsel. (Dkt. 10, Ex. 2.) Petitioner's pursuit of this motion ultimately resulted in petitioner pleading guilty to amended charges and to his original charges being vacated. (*See id*., Exs. 6-10.) Petitioner subsequently moved to withdraw his guilty pleas, a motion which the trial court denied. (*See id*., Exs. 11, 12.) It is events surrounding petitioner's guilty pleas and subsequent efforts to withdraw those pleas that give rise to the claims asserted in this federal habeas action.

The Washington Court of Appeals, on direct appeal of the trial court's denial of petitioner's motion to withdraw his 2013 guilty pleas, summarized the facts underlying petitioner's pleas and his attempt to withdraw those pleas, as follows:

> Fernanda Torres, an attorney with the Innocence Project Northwest, filed a CrR 7.8(b)(5) motion for relief from judgment on Walker's behalf. The motion asserted that the performance of Walker's trial counsel was deficient because the attorney (1) failed to request a material witness warrant to secure the testimony of a potential defense witness and (2) failed to review medical records that supported Walker's defense. About a week before the motion hearing, Torres and her co-counsel David Allen decided to strike the part of the motion concerning the potential witness. In Torres's opinion, the amended motion was significantly weaker than the original motion. Torres informed Walker of the amendment and told him that she did not expect to prevail on the CrR 7.8 motion. Walker authorized Torres to attempt to negotiate a settlement with the State.
>
> The day before the motion hearing, the State offered a plea of assault in the first degree and rape in the third degree, which would result in a determinate sentence of 138 months. Torres discussed the offer with Walker for about two hours that morning. A large part of their discussion concerned the difference

REPORT AND RECOMMENDATION
PAGE - 3

between a determinate sentence, under which Walker was certain to be released at the end of his term, and an indeterminate sentence, under which Walker could serve life in prison if the indeterminate sentence review board found that he was likely to reoffend. Torres and Allen met with Walker again that afternoon. Walker authorized them to accept the offer and Torres prepared the plea documents.

On the morning of the motion hearing, Torres reviewed the documents with Walker, which included a straight plea to the assault charge and an Alford[1] plea to the sex offense. A document titled "Exhibit A" was attached to both pleas. Exhibit A included statements addressing Walker's right to claim ineffective assistance of counsel and expressing satisfaction with his attorneys:

> Pursuant to this plea agreement, I agree to waive any appeal of my conviction or imposition of a standard range sentence on the amended charges. . . . <u>I understand this does not include a waiver to a claim of ineffective assistance of counsel. I am satisfied with the representation and counsel I have received from my attorneys, Fernanda Torres and David Allen.</u> I also understand that by pleading guilty to these charges, I am agreeing to the dismissal of my CrR 7.8(b) motion.

Clerk's Papers (CP) at 366. (Emphasis added.).

Following her meeting with Walker, Torres reviewed the plea paperwork with the State. The State objected to the sentence in Exhibit A that stated "I understand this does not include a waiver to a claim of ineffective assistance of counsel." CP at 406. Torres blacked out that sentence. Torres met with Walker again and Walker signed the plea documents.

At the plea colloquy, Walker stated that he understood the plea, adopted the factual statements as his own, and was not acting in response to threats or promises. He stated that he agreed with Exhibit A and did not need more time to consult with his lawyer. After finding Walker's decision was knowing, intelligent and voluntary, the court accepted his guilty plea.

Later that same day, Walker sent a letter to the trial court asking to withdraw his plea. After the court appointed new counsel, Walker argued that the plea was not voluntary because of the short time he had to consider the offer and because his attorneys exaggerated the possibility that he would spend life in prison under his indeterminate sentence. He argued that the plea was not knowing because he did not understand the rights he relinquished in Exhibit A. He also argued that the sentence in Exhibit A that asserted his satisfaction with the representation he

---

[1] [Court of Appeals' footnote 1] Under North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a defendant may, under some circumstances, enter a guilty plea without admitting his guilt. Washington adopted the Alford holding in State v. Newton, 87 Wn.2d 363, 552 P.2d 682 (1976).

REPORT AND RECOMMENDATION
PAGE - 4

received from his attorneys demonstrated that his attorneys had a conflict of interest.

At the hearing on Walker's motion to withdraw his guilty plea, Torres testified to her meetings with Walker during plea negotiations. She stated that she reviewed Exhibit A with Walker after striking the sentence concerning Walker's right to claim ineffective assistance of counsel and explained to him that striking the sentence had no effect. Torres also stated that the sentence in Exhibit A expressing Walker's satisfaction with representation was intended to make it more difficult for Walker to prevail on a claim of ineffective assistance of counsel. Torres stated that she did not believe the sentence had any practical effect. She also stated that, in retrospect, she should have stricken the expression of satisfaction when she struck the sentence concerning Walker's right to claim ineffective assistance of counsel.

The trial court considered Torres's testimony, Walker's declaration, the briefing of both parties, and the recording of the plea hearing. The court denied Walker's motion to withdraw his guilty plea because it found that he failed to demonstrate a manifest injustice.

(*Id*., Ex. 17 at 1-4.)

Petitioner appealed the trial court's order denying his motion to withdraw his guilty plea to the Washington Court of Appeals. (*Id*., Ex. 14.) The Court of Appeals issued an unpublished opinion affirming the trial court's decision on February 8, 2016. (*Id*., Ex. 17.) Petitioner's subsequent motion for reconsideration of the Court of Appeals' opinion was denied, as was his petition seeking discretionary review by the Washington Supreme Court. (*Id*., Exs. 18-21.) The Court of Appeals issued its mandate terminating review on September 9, 2016. (*Id*., Ex. 22.)

On February 27, 2017, petitioner filed a *pro se* CrR 7.8 motion with the King County Superior Court challenging his guilty pleas. (*Id*., Ex. 23.) The Superior Court transferred the motion to the Washington Court of Appeals for consideration as a personal restraint petition, and the Court of Appeals dismissed the petition on March 26, 2018. (*Id*., Exs. 24, 27.) Petitioner's subsequent motion for discretionary review was denied by the Washington Supreme Court Commissioner, and his motion to modify the Commissioner's ruling was likewise denied. (*See*

*id.*, Exs. 28, 30-32.) The Court of Appeals issued a certificate of finality in petitioner's personal restraint proceedings on October 26, 2018. (*Id.*, Ex. 33.) Petitioner now seeks federal habeas review of his convictions.

## GROUNDS FOR RELIEF

Petitioner identifies three grounds for relief in his federal habeas petition which may be summarized as follows:

(1) Petitioner was denied effective assistance of counsel in relation to his 2013 guilty pleas.

(2) Petitioner's due process rights were violated when the trial court accepted petitioner's guilty plea to the first-degree assault charge without finding that there was a factual basis for the plea.

(3) Petitioner's convictions violate double jeopardy because he entered his guilty plea to the amended information before his 2010 convictions were vacated.

(*See* Dkt. 6 at 5, 7, 8.)

## DISCUSSION

Respondent concedes that petitioner properly exhausted his three ground for federal habeas relief by properly presenting the claims to the Washington Supreme Court for review. (*See* Dkt. 9.) Respondent argues, however, that petitioner's claims lack merit and provide no basis for federal habeas relief. (*See id.*)

### Standard of Review

Federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The Supreme Court has also explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

In considering a habeas petition, this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170,

181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### Ineffective Assistance of Counsel

Petitioner asserts in his first ground for relief that he was denied effective assistance of counsel in relation to his 2013 guilty pleas which he claims were not knowing and voluntary. (*See* Dkt. 6 at 5; Dkt. 13 at 4-12.) Specifically, petitioner asserts that counsel "wrongfully struck a reversible error from Walker's motion," misinformed him of the effect of striking that language, and failed to evaluate the state's case against him. (*See* Dkt. 6 at 5.)

Due process requires that a guilty plea be both knowing and voluntary. *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). A defendant who enters a guilty plea on the advice of counsel may only attack the voluntary and intelligent character of the plea by demonstrating that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases. *See Hill*, 474 U.S. at 56-57 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).

Ineffective assistance of counsel claims arising out of the plea process are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hill*, 474 U.S. at 56. Under *Strickland*, a defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 687. There

is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance. *Id*. at 689.

With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id*. at 688. Judicial scrutiny of counsel's performance must be highly deferential. *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. In order to prevail on an ineffective assistance of counsel claim, a petitioner must overcome the presumption that counsel's challenged actions might be considered sound strategy. *Id*.

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. In order to satisfy the "prejudice" requirement of the *Strickland* standard in the context of a guilty plea, a petitioner must demonstrate that it is reasonably probable that, but for counsel's errors, "he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

While the Supreme Court established in *Strickland* the legal principles that govern claims of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate whether defense counsel's performance fell below the *Strickland* standard. *Harrington*, 562 U.S. at 101. Rather, when considering an ineffective assistance of counsel claim on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id*. As the Supreme Court explained in *Harrington*, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*.

REPORT AND RECOMMENDATION
PAGE - 9

Issues concerning counsel's effectiveness and the voluntariness of petitioner's pleas were first raised in petitioner's motion to withdraw his guilty pleas. Petitioner argued in his motion that his pleas were not voluntary because of the short time he had to consider the state's plea offer and because his attorneys exaggerated the possibility he would spend life in prison under his indeterminate sentence. (*See* Dkt. 10, Ex. 17 at 3.) He argued as well that his pleas were not knowing because he did not understand the right he relinquished in Exhibit A to his statements on plea of guilty. (*Id*.) Finally, he argued that the sentence in Exhibit A that expressed his satisfaction with the representation he received from his attorneys demonstrated that his attorneys had a conflict of interest. (*Id*.)

The trial court held a hearing on petitioner's motion to withdraw his guilty pleas at which his former counsel testified at length. (*See id*., Ex. 10 at 61-94.) The court thereafter entered an order denying petitioner's motion in which it specifically addressed petitioner's allegations regarding defense counsel's effectiveness and the voluntariness of petitioner's plea:

> Torres and Walker met at least three times before Walker entered his plea, during which counsel advised that they did not expect to prevail on the CrR 7.8 motion and advised him of the differences between determinate and indeterminate sentences. During the plea colloquy, Walker stated that he understood the consequences of his plea and the rights he was giving up by pleading guilty and he denied needing additional time to speak with counsel. Walker has failed to show that counsel was ineffective in advising him on the plea or that his plea was involuntary based on the length of time he had to consider the plea. Both counsel and the court asked Mr. Walker if he wanted any more time or more opportunity to discuss anything with his lawyer and he indicated he did not.
>
> . . . .
>
> The inherent difficulty of defendant's choice to plead guilty does not render a plea involuntary. Defense counsel explicitly outlin[ed] the situation he was facing, Explaining [the] difference between determinate and indeterminate sentence[s] is <u>not</u> equivalent to any type of coercion. Although defendant was faced with a difficult choice, he was not coerced in any way. In fact [the] court finds defense counsel's effort to fully explain to Mr. Walker the situation he was facing was evidence of their effectiveness.

REPORT AND RECOMMENDATION
PAGE - 10

(*Id*., Ex. 12 at 5-6.)

The trial court also rejected petitioner's claim that the language in Exhibit A to petitioner's statements on plea of guilty – that concerning petitioner's satisfaction with counsel's advice and the stricken language concerning a waiver of an ineffective assistance of counsel claim – gave rise to a conflict of interest on the part of defense counsel:

> Although the expression of satisfaction with counsel in exhibit A to the statements of defendant on plea of guilty would not support a claim of ineffective assistance, exhibit A does not waive Walker's right to claim ineffective assistance of counsel nor did Torres advise Walker to waive that right. There is no evidence that an actual conflict of interest adversely affected Torres's representation.

(*Id*.)

Petitioner challenged these rulings on appeal, and the Washington Court of Appeals rejected petitioner's claim that his plea was not voluntary, concluding that petitioner's own statements at the plea colloquy, and his attorney's testimony at the hearing on petitioner's motion to withdraw his guilty plea, supported the conclusion that his decision to enter the plea was knowing, intelligent, and voluntary. (*Id*., Ex. 17 at 5-7.)

The Court of Appeals also rejected petitioner's claims as they related to the language in Exhibit A, explaining its conclusion as follows:

> Walker contends that when Torres reviewed Exhibit A with him the document included the sentence: "I understand this does not include a waiver to a claim of ineffective assistance of counsel." Id. He asserts that striking the sentence affected his rights on appeal, Torres did not explain the significance of the change, and he thus waived a right unknowingly. Walker's argument fails because the deleted sentence did not change Walker's rights or the consequences of his plea. The sentence merely stated that Walker understood that he had the right to claim ineffective assistance of counsel. Deleting the sentence did not waive the right.
>
> Walker's assertion that Torres did not explain the effect of deleting the sentence is not supported by the record. A finding of fact is upheld on appeal if it is supported by substantial evidence. A.N.J., 168 Wn.2d at 107. Walker argues that Torres stated that she did not specifically remember explaining the amendment to Exhibit A and that she only said she "would have" explained it. Brief of

> Appellant at 19-20. But Torres consistently and repeatedly stated that she explained the sentence concerning the right to bring a claim of ineffective assistance of counsel and that removing the sentence had no effect. Although she frequently used the conditional tense, her testimony as a whole does not express uncertainty. Torres did not specifically remember explaining the sentence expressing Walker's satisfaction with counsel, but she did remember explaining the sentence concerning his right to claim ineffective assistance of counsel. We conclude that substantial evidence supports the trial court's finding that Torres explained the amendment to Exhibit A.

(*Id.*, Ex. 17 at 6-7.) Finally, the Court of Appeals rejected petitioner's claim alleging a conflict of interest based on the language in Exhibit A. (*Id.*, Ex. 17 at 7-9.)

In his subsequent personal restraint proceedings, petitioner argued that his plea to the first-degree assault charge lacked a factual basis and was involuntary, and that counsel was ineffective in assisting him to plead guilty to a charge for which there was no factual basis. (*Id.*, Ex. 23.) The state courts rejected these claims, with the Washington Supreme Court explaining that petitioner provided a sufficient factual basis for his first-degree assault conviction in his written statement on plea of guilty. (*Id.*, Ex. 30 at 2.) That statement read as follows: "In King County, WA, with intent to inflict great bodily harm, I did assault Bridget Mitchell and inflicted great bodily harm upon Bridget Mitchell, to wit: I strangled her, which caused bodily injury that created a probability of death. This happened on 6/21/08." (*See id.*) The Supreme Court also concluded that there was no factual basis for petitioner's claim that his plea was involuntary. (*Id.*, Ex. 30 at 3.)

With respect to petitioner's ineffective assistance of counsel claim, the Supreme Court concluded as follows:

> [A]s discussed above, there was a factual basis for the first degree assault conviction, and the overall indivisible plea agreement obtained by counsel succeeded to reduce Mr. Walker's sentence from an indeterminate life sentence to a determinate term of 138 months. Counsel was not professionally deficient in obtaining such a windfall.

(*Id.*)

REPORT AND RECOMMENDATION
PAGE - 12

The state courts reasonably rejected each and every one of petitioner's challenges to the voluntariness of his guilty plea and the effectiveness of counsel in relation to his guilty plea. The record of proceedings before the trial court amply demonstrates that counsel's representation of petitioner fell well within the range of competence demanded by the Sixth Amendment. Counsel filed the CrR 7.8 motion challenging petitioner's presumptively valid original convictions and his indeterminate sentence. After assessing the strength of that motion, and the ultimate likelihood of success on the motion, counsel engaged in plea negotiations with the state and negotiated a highly favorable plea deal for petitioner.

Petitioner acknowledged at the time he entered his pleas that he had reviewed the plea documents with counsel and that he understood the contents of those documents. Petitioner also acknowledged that he understood the rights he was giving up by pleading guilty and he denied that anyone had made any threats or promises to get him to plead guilty. Finally, petitioner affirmed that the written statement contained in the plea documents which clearly provided the factual basis for the first degree assault charge was true. These acknowledgements, made in open court, carry a strong presumption of verity. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Now, despite these acknowledgements, petitioner contends that counsel failed to discover and/or to inform him that the facts of his case would not satisfy the essential elements of the first degree assault charge, and he maintains that if counsel had properly informed him that there was no factual basis for such a charge, he would not have pleaded guilty and would have insisted on going to trial. (*See* Dkt. 13 at 7-12.) Petitioner clearly misapprehends the posture of his case at the time he entered his plea. Petitioner did not have the option of proceeding to trial as an alternative to entering a plea because he was already subject to a presumptively final conviction and sentence. Only if petitioner had ultimately prevailed on the CrR 7.8 motion and his original

convictions had been vacated, might petitioner have been in a position to make the choice he now argues he should have been afforded. Petitioner did not prevail on his CrR 7.8 motion, the motion ultimately just provided leverage for counsel to negotiate a more favorable resolution for petitioner. Once petitioner entered his pleas, the CrR 7.8 motion was dismissed. (*See* Dkt. 14, Suppl. Ex. 34.)

Petitioner's claim here that there was no factual basis for his guilty plea to the first degree assault charge, and that he was effectively coerced into entering the plea to that charge, fails in the face of petitioner's own contrary statements at his guilty plea hearing. Petitioner's dissatisfaction with the ultimate outcome of his case does not render his plea involuntary nor his counsel's assistance deficient.

In sum, petitioner fails to demonstrate that the state courts' decisions rejecting his challenges to the voluntariness of his pleas and the effectiveness of his counsel were contrary to, or constituted an unreasonable application of, clearly established United States Supreme Court precedent. Accordingly, petitioner's federal habeas petition should be denied with respect to his first ground for relief.

### Factual Basis of Guilty Plea

Petitioner asserts in his second ground for relief that his due process rights were violated when the trial court failed to comply with state law and ensure that there was a factual basis for his guilty plea to the first degree assault charge. (Dkt. 6 at 7.) Respondent asserts that this claim fails to state a constitutional ground for relief. (Dkt. 9 at 20.) Respondent argues that the state law provision and state court rule petitioner cites in his petition are not of constitutional magnitude. (*Id*.) He further argues that the Due Process Clause does not require the court to make an on-the-record development of the factual basis supporting a guilty plea. (*Id*.) Respondent is correct.

Due process requires that a plea be knowing and voluntary. *Boykin*, 395 U.S. at 242, 244. In order for a guilty plea to be considered knowing and voluntary, the defendant must have an understanding of the nature of the charges, the constitutional rights he is waiving, and the consequences of his plea. *See Loftis v. Almager*, 704 F.3d 645, 647 (9th Cir. 2012). The Constitution does not require state courts to find a factual basis for a plea unless the plea is accompanied by protestations of innocence. *Id*. at 648 (collecting cases).

As explained above, the state courts reasonably concluded that petitioner's guilty pleas were knowing and voluntary. At the time petitioner entered his plea to the first degree assault charge he affirmed the written statement contained in his plea agreement which provided a factual basis for that charge. (*See* Dkt. 10, Ex. 8 at 8, ¶ 11 and Ex. 10 at 14.) Under these circumstances, there was no federal constitutional requirement that the trial court further develop the factual basis for the plea. As the record makes clear that petitioner's second ground for relief does not implicate federal constitutional concerns, his petition should be denied with respect to that claim.

## Double Jeopardy

Petitioner asserts in his third ground for relief that his guilty plea violated double jeopardy because his original convictions on charges of second degree assault, second degree rape, and felony harassment were not vacated before petitioner entered his guilty plea to the charges of first degree assault and third degree rape which are the basis of his current confinement. (Dkt. 6 at 8.) Respondent argues that because the court signed the order vacating petitioner's 2010 convictions immediately after accepting petitioner's pleas to the amended charges at the 2013 plea hearing, and because judgment was not entered on the amended charges until several months after the court vacated the prior convictions, petitioner was never subjected to double punishment for the same offenses. (Dkt. 9 at 24-25.) Respondent further argues that petitioner waived any possible double

jeopardy challenge by entering a voluntary, unconditional guilty plea, and agreeing to do so prior to the vacation of his prior conviction. (*Id*. at 25.)

The Fifth Amendment to the United States Constitution guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend V. The Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after conviction, a second prosecution for the same offense after acquittal, and multiple punishments for the same offense. *Schiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

Petitioner raised his double jeopardy claim in his *pro se* CrR 7.8 motion seeking to withdraw what he claimed were invalid guilty pleas. (*See* Dkt. 10, Ex. 23.) As noted above, that motion was transferred from the King County Superior Court, where it was originally filed, to the Washington Court of Appeals for consideration as a personal restraint petition. (*Id*., Ex. 24.) The Washington Court of Appeals rejected petitioner's double jeopardy claim, explaining its conclusion as follows:

> Walker alleges a double jeopardy violation because the trial court accepted his pleas before entering an order vacating his prior convictions. But guilty pleas, like jury verdicts, do not violate double jeopardy. State v. Knight, 162 Wn.2d 806, 813, 174 P.3d 1167 (2008); State v. Womac, 160 Wn.2d 643, 658, 160 P.3d 40 (2007). It is the entry of "multiple convictions for the same offense" which offends double jeopardy. Knight, 162 Wn.2d at 813. The court did not enter convictions on Walker's guilty pleas until March 2014, many months after the court vacated his 2010 convictions. There was no double jeopardy violation.

(*Id*., Ex. 27 at 6.) The Washington Supreme Court likewise rejected petitioner's double jeopardy claim, explaining that "the convictions do not violate double jeopardy principles simply because in his plea he agreed to vacate the prior convictions. The current judgment and sentence is not duplicative." (*Id*., Ex. 30 at 3.)

REPORT AND RECOMMENDATION
PAGE - 16

The record confirms that at the time petitioner appeared before the trial court to enter his guilty pleas to the amended charges on November 1, 2013, the intent and agreement of the parties was that petitioner's convictions pursuant to the jury verdicts entered at his 2010 trial would be vacated as soon as petitioner entered his pleas to the amended charges. (*See id*., Ex. 10 at 4-7.) And, in fact, immediately after accepting petitioner's guilty pleas to the amended charges, the trial court signed the order vacating petitioner's original convictions. (*Id*., Ex. 10 at 20-21.) Judgment was not entered on the offenses to which petitioner pleaded guilty until March 2014, many months after petitioner's original convictions were vacated. (*See id*., Ex. 13.) Petitioner therefore was not subject to double punishment.

To the extent the filing of amended charges against petitioner prior to the vacation of the original charges could be deemed a second prosecution following his convictions on related offenses, petitioner effectively waived any double jeopardy challenge when he entered his pleas. *See Tollett v. Henderson*, 411 U.S. 258, 266-267 (1973) (an individual who voluntarily and intelligently pleads guilty to a criminal offense generally may not seek collateral relief in federal habeas proceedings based upon an antecedent constitutional infirmity); *see also*, *United States v. Hernandez-Guardado*, 228 F.3d 1017, 1028 (9th Cir. 2000) ("In the context of a plea bargain or guilty plea . . . a defendant may intelligently and voluntarily waive his right against double jeopardy."); *Ricketts v. Adamson*, 483 U.S. 1, 11 (1987) (concluding that the right against double jeopardy is not implicated where the defendant enters into a plea bargain).

Petitioner fails to demonstrate that the state courts' rejection of his double jeopardy claim was contrary to, or constituted an unreasonable application of, clearly established United States Supreme Court precedent. Accordingly, petitioner's federal habeas petition should be denied with respect to his third ground for relief.

Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.  A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his petition.

CONCLUSION

Based on the foregoing, this Court recommends that petitioner's petition for writ of habeas corpus be denied and this action be dismissed with prejudice.  This Court also recommends that a certificate of appealability be denied with respect to all claims asserted in this federal habeas action.  A proposed order accompanies this Report and Recommendation.

OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **August 9, 2019**.

DATED this 18th day of July, 2019.

_____
Mary Alice Theiler
United States Magistrate Judge